IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-cv-182-BO

| | | |
|---|---|---|
| PENNYMAC LOAN SERVICES, LLC, | ) | |
|     Appellant, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| STEPHANIE LYNN GARNER, and | ) | |
| JOSEPH A. BLEDSOE, *Chapter 13* | ) | |
| *Trustee*, | ) | |
|     Appellees. | ) | |

This matter is before the Court on an appeal of the bankruptcy court's order avoiding and cancelling a judicial lien of PennyMac Loan Services, LLC. For the reasons discussed below, the order of the bankruptcy court is AFFIRMED.

## BACKGROUND

On March 28, 2008, Haywood Garner, James Carver, and Stephanie Garner ("debtor") acquired land in Rocky Point, North Carolina through a general warranty deed. A manufactured home was situated on the land. Pursuant to the general warranty deed, debtor obtained a one-third, undivided interest in the land. On March 27, 2008, Haywood Garner and James Carver signed a promissory note with Countrywide Bank for a principal sum of $77,388. To secure the note, the two men delivered a deed of trust in Countrywide's favor and identified it as encumbering their Rocky Point property, including the manufactured home. The deed was dated March 27 and was recorded on March 28. Debtor did not execute the deed of trust.

Countrywide subsequently transferred the note and the deed of trust to PennyMac Loan Services, LLC ("PennyMac").

In August 2017, PennyMac filed an action in Pender County Superior Court to reform the deed of trust, legally affix the manufactured home to the land, and quiet title to the property. Debtor was served with process but defaulted. Haywood Garner consented to the entry of an order granting the relief requested by PennyMac.

In August 2018, the Pender County Superior Court entered an order granting default judgment and consent judgment, giving PennyMac its requested relief. The state court judgment (1) reformed the deed of trust, (2) legally affixed the manufactured home to the land, (3) declared that PennyMac held a first position lien on the property, and (4) quieted title.

Most critically for this appeal, as part of reforming the deed of trust, the court's default judgment found that debtor's failure to sign was inadvertent error and that the money advanced by Countrywide was also to debtor. The court reformed the deed of trust as if debtor had signed it, relating back to the original recording.

On March 7, 2019, debtor filed for Chapter 13 bankruptcy in this district. PennyMac filed a proof of claim with the bankruptcy trustee. Debtor moved to avoid PennyMac's lien, arguing it was a judicial lien and therefore avoidable under 11 U.S.C. § 522(f)(1)(A). The bankruptcy court agreed with debtor. PennyMac appealed.

## DISCUSSION

"[J]udicial liens encumbering exempt property can be eliminated." *Owen v. Owen*, 500 U.S. 305, 306 (1991) (citing § 522(f)). There is no dispute that the property at issue here would be otherwise exempt. The question is whether the state court default judgment reforming the deed of trust to include debtor constitutes an avoidable judicial lien under the Bankruptcy Code.

The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37). A "judicial lien" is a "lien

obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36). In this case, debtor was included in the deed of trust via reformation. Reformation is an equitable remedy, which necessarily involves the court's broad discretion to shape relief. *See Kinlaw v. Harris*, 364 N.C. 528, 533 (2010), *and Metro. Prop. & Cas. Ins. Co. v. Dillard*, 126 N.C. App. 795, 798 (1997).

The state court's reformation of the deed of trust fits the plain language of the Code's definition of "judicial lien." First, the deed reformation gave PennyMac an interest in debtor's property to secure payment of a debt—a lien. And second, PennyMac obtained this lien through a state court equitable judgment, which neatly fits within the definition of judicial lien.

Debtor did not sign the deed of trust. PennyMac held no valid lien against debtor's interest in the property until the state court exercised its discretion and reformed the deed of trust to include debtor. *See* N.C. Gen. Stat. § 47-14(d) (registration of deed of trust not effective as to parties who have not executed the instrument). It was the state court's decision to reform the deed that created PennyMac's interest in debtor's share of the property.

PennyMac argues the lien originates not in the state court's judgment, but in the deed of trust as a security interest. The company emphasizes that the state court's judgment relates back to the recording of the deed of trust, and that, the lien could not have related back if it did not originate with the deed of trust. Moreover, PennyMac contends that the state court's judgment is not a lien because there is nothing in the judgment to execute.

These arguments are unavailing. First, PennyMac's lien on debtor's property interest cannot be a security interest. With very limited exceptions not applicable here, the creation of a security interest requires an agreement between the debtor and the secured party. Here, debtor did not execute the deed of trust. Debtor was not part of the agreement. Second, the state court's

3

power to "relate back" via reformation is part of its equitable power to re-write instruments to accord with its perception of the parties' intent. The power does not trump all other considerations. For instance, reformation of a deed of trust relating back to the date of execution does not subordinate an intervening lien. *In re Law Developers, LLC*, 404 B.R. 136, 140 (Bankr.E.D.N.C. 2008) (citing *M & J Fin. Corp. v. Hodges*, 230 N.C. 580 (1949)). The court's equitable judgment to "relate back," cannot run roughshod over all other interests and law—and it certainly does not define the Code's definition of judicial lien. As to PennyMac's argument that there is no lien in the state court judgment to enforce, "[i]t is the origin of the creditor's interest rather than the means of enforcement that determines the nature of the lien." *In re Thompson*, 240 B.R. 776, 781 (B.A.P. 10th Cir. 1999). In every real sense, PennyMac's lien originated in the state court judgment. To put it simply, PennyMac had nothing until it secured a default judgment against debtor.

PennyMac also argues that debtor cannot avoid PennyMac's lien on the manufactured home because she actually acquired her interest in the home at the same moment PennyMac's lien attached to it—when the state court issued its order. PennyMac argues this runs afoul of *Farrey v. Sanderfoot*, 500 U.S. 291 (1991). PennyMac waived this argument by failing to raise it with the bankruptcy court.

In sum, the Court agrees with the bankruptcy court that PennyMac's lien on debtor's interest in the property is a judicial lien. The lien was obtained through reformation, an equitable process. This falls squarely within the Code's definition of "judicial lien."

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.

4

SO ORDERED, this _____ day of March, 2020.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE